![Werman Salas P.C. letterhead - 77 West Washington Street, Suite 1402, Chicago, IL 60602 Tel: 312-419-1008 | Fax: 312-419-1025 www.flsalaw.com]

November 7, 2024

**Via CM/ECF**
Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 6A South
Brooklyn, New York 11201

                Re:    *Asia Hunter, et al. v. Next Level Burger Company, Inc.*
                       Case No. 1:23-cv-03483-HG

Dear Judge Gonzalez:

      Werman Salas P.C. represents Plaintiffs Asia Hunter, Neosha Marshall, Cameron Mitchell, and Joelson Marcelle ("Named Plaintiffs"), along with 11 Opt-in Plaintiffs (collectively, "Plaintiffs"). Plaintiffs with Defendant Next Level Burger Company, Inc. ("Defendant" or "NLB") submit this letter in response to the Court' October 23, 2024 Order instructing the parties to file a supplemental letter regarding five issues.

**I.**      **Potential Recovery**

      Plaintiffs provide the following information regarding the settlement recovery. The actual amounts each individual Named Plaintiff and Opt-in Plaintiff will recover is set forth in the Settlement Agreement. ECF No. 41-2 (Agr.) § I(A).

      **A.**      **Unpaid Tips Claims**

Defendant produced the following data:

- NLB_000329-000350.pdf, attached as **Exhibit A**.[1]
- Named Plaintiffs' W-2s, **Exhibit B**.
- Additional plaintiffs data-employment dates and wages.xlsx, **Exhibit C**.

      The file named NLB_000329-000350 contains copies of Tip Tracker data that Defendant kept in their regular course of business. The Tip Tracker contains the data fields: Employee Name, Hours Worked, and Tip Total. Some of the Tip Tracker sheets also indicate the dates that the tips

---

[1]    All Exhibits are attached to the Declaration of Sally J. Abrahamson.

were collected.

**Methodology:** Plaintiffs entered the Tip Tracker data into an Excel worksheet. For each Tip Period, Plaintiffs computed the Tips Received per Hour, the Length of the Tip Period (in days), the Number of Weeks in the Tip Period, and the number of Hours Worked per Week. See **Ex. D**. Plaintiffs then computed the Average Tips per Hour, the Average Hours worked per week, and the Average Tips per Week of each Plaintiff in the Tip Tracker data.[2]

For each Tip Period, Plaintiffs used the following formula:

$$\text{Tip Total} \div \text{Hours Worked} = \text{Average Tips per Hour}$$
$$\text{Hours Worked} \div \text{Weeks in Tip Period} = \text{Average Hours Worked per Week}$$
$$\text{Average Hours Worked per Week} \times \text{Average Tips per Hour} = \text{Average Weekly Tips}$$

Because the data was not all inclusive of Plaintiffs' tenures with Defendant, Plaintiffs computed a general Average Tips per Week amount of $5.76. See **Ex. E**.

Plaintiffs calculated the Number of Weeks each Plaintiff worked for Defendant during the relevant FLSA period and assumed based on recollections that Plaintiffs did not receive any tips in one-third of the workweeks they worked ("No Tips Weeks"). Plaintiffs computed Total Owed Tips by multiplying the No Tips Weeks by the Average Tips per Week amount of $5.76.

To compute Total Owed Tips, Plaintiffs used the following formula:

$$\text{Number of Relevant FLSA Weeks} \times 1/3 = \text{No Tip Weeks}$$
$$\text{No Tip Weeks} \times \text{Average Weekly Tips} = \text{Total Owed Tips}$$

Because the amount of Total Owed Tips amounted to modest amounts ranging from $11.52 to $99.84, Plaintiffs assigned a flat amount of $50.00 in unpaid wages and $50.00 in liquidated damages in exchange for the release of the FLSA Tip claim. The $50.00 payment of unpaid wages represents approximately 50% to 100% of their estimated unpaid cash tips.[3] See **Ex. F**.

**B.     NYLL § 191 Claims**

Section 191 of the New York Labor Law ("NYLL") requires employers to pay "manual workers" "weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a). "Manual workers" is a broad term that covers a wide range of employees that perform physical labor. *Beh v. Cmty. Care Companions Inc.*, No. 19 Civ. 1417, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021) ("[C]arpentry workers, cooks, wait staff, grocery store employees, janitorial staff, hotel maids, airport chauffeurs, and pizzeria workers have been found to be 'manual workers.'"), *adopted*, 2021 WL 3914320 (W.D.N.Y. June

---

[2]     Defendant did not produce Tip Tracker data for Plaintiffs Sheretha Anderson and Tamarcus Alexander.

[3]     Plaintiffs' formula caps each person who received at least their maximum Total Owed Tips at 100%.

23, 2021) (2021 WL 3914297). The New York Department of Labor defines manual laborers as "employees who spend more than 25 percent of their working time performing physical labor." N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009).

Plaintiffs allege that NLB failed to pay its employees on a weekly basis in violation of the NYLL. Its employees are fast food cooks and cashiers, and thus they are manual laborers for purposes of the NYLL. As a result, these manual workers are entitled to liquidated damages under Section 198 of the NYLL resulting from the untimely payments. *See, e.g.*, *Rodrigue v. Lowe's Home Ctrs., LLC*, No. 20 Civ. 1127, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021). Plaintiffs alleged that Defendant owed Plaintiffs liquidated damages for wages earned in which they did not receive payment within seven calendar days after the end of the week in which the wages were earned, which would be approximately 50% of all wages earned, as Plaintiffs were paid every other week. Based on the data Defendant provided to Plaintiffs, the total amount of untimely wages paid to Plaintiffs amounted to approximately $203,391.48. Of the settlement amount of $90,000, $88,500 is allocated to the NYLL § 191 claims ($90,000 - $750 in FLSA Unpaid Tip Claims and $750 in FLSA Liquidated Damages). This equals approximately 44% of the total potential recovery on the NYLL § 191 claim ($88,500/$203,391.48=43.5%).

The statutory penalties on the NYLL §191 claim were allocated on a pro rata basis based on the number of weeks each Named Plaintiff and Opt-in Plaintiff worked. Plaintiffs determined each Plaintiff's Relevant NYLL Weeks using their dates of employment. Each Plaintiff's Pro Rata Share was computed by dividing their Relevant NYLL Weeks by the Total Number of NYLL Weeks for all Plaintiffs. *See* **Exhibit G**. Each Named Plaintiff's and Opt-in Plaintiff's Pro Rata Share was then multiplied by $45,100, which represents the net amount remaining after payments are made from the Settlement Payment to account for Attorneys' Fees & Costs ($31,400), Service Awards ($12,000), and the FLSA Claims ($1,500).

To compute each Plaintiff's recovery of the NYLL § 191 claim, Plaintiffs used the following formula:

Each Plaintiff's Workweeks ÷ Sum of All Plaintiffs' Workweeks = Pro Rata Share
Settlement - (FLSA Damages, including liquidated, Attorney's fees and costs, and Service Awards) = Available Fund for NYLL § 191 Claim
Each Plaintiff's Pro Rata Share x Available Fund for NYLL § 191 Claim = §191 Statutory Penalties

## II. Named Plaintiffs Should be Awarded the Requested Service Award.

Courts routinely award service payments in wage-and-hour class settlements. *See, e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *6 (E.D.N.Y. Sept. 28, 2018) (collecting awards ranging from $5,000 to $30,000 per person). Service awards are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 7854, 2021 WL 535635, at *4 (S.D.N.Y. Feb. 12, 2021) (cleaned up). In examining service awards, courts consider the: (1) risks incurred; (2) effort expended prosecuting the case, and value added

to it; and (3) ultimate recovery. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

  As to the first factor, the risks to the Named Plaintiffs are similar to those in the Rule 23 class action context, such as discrimination from future employers who may learn of this litigation. *Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *5 (E.D.N.Y. Sept. 26, 2018) (given the risks of future retaliation inherent in bringing an FLSA action as a named plaintiff, service payments requested were reasonable); *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718, 2011 WL 6399468, at *3 (S.D.N.Y. 2011) (stating that "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff"); *Velez v. Majik Cleaning Serv.,* No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers") (cleaned up). Named Plaintiffs faced significant risk by publicly filing claims against their former employer. In situations like this, plaintiffs jeopardize "their ability to depend on the employer for references in connection with future employment." *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010).

  As to the second factor, the Named Plaintiffs expended considerable effort in prosecuting this case. Plaintiff Hunter initiated this action on May 9, 2023. ECF No. 1. Plaintiff Hunter reviewed the complaint before initiating the case. Abrahamson Decl. ¶ 4. After Plaintiffs Marshall, Mitchell, and Marcelle joined as Named Plaintiffs, Plaintiffs amended the complaint, and all Named Plaintiffs reviewed the Amended Complaint and provided feedback. *Id.* ¶ 5. ECF No. 11. Named Plaintiffs regularly assisted counsel's investigation and prosecution of the claims by providing detailed information and documents regarding their work (including paystubs and a screenshot of Defendant's communications regarding its tip policy), regularly making themselves available to counsel to review Defendant's document productions and arguments, and to discuss responses. Abrahamson Decl. ¶ 6. Named Plaintiffs also reached out to witnesses. *Id.* All Named Plaintiffs provided declarations in support of their successful and contested Motion for Conditional Certification. *See* ECF No. 28-1 – 28-4. All Named Plaintiffs prepared for and actively participated in the settlement conference on May 15, 2024 before Magistrate Judge Marcia Henry. *Id.* Plaintiffs are low-income workers who had to schedule around their work and childcare responsibilities to participate in this case. *Id.* Thus, their contributions warrant the awards. *See Weston,* 2018 WL 4693527, at *5 (service award approved for plaintiffs who brough action, provided discovery, attended an in-person meeting with counsel, reviewed documents, and helped prepare for mediation).

  Plaintiffs' efforts and sustained litigation led to a robust recovery for the Opt-in Plaintiffs who did not have to do anything to push the litigation forward after they filed their consent to join forms. Plaintiffs and Opt-in Plaintiffs recovered approximately 50 to 100% of the FLSA claims and approximately 44% of the NYLL claims. This amount surpasses the percentage of recovery in other wage and hour settlements that this Court has approved. *See Villegas v. Jorge's Rest. Corp.*, No. 23 Civ. 01492, 2024 WL 2033495, at *1-2 (E.D.N.Y. Apr. 24, 2024) (Gonzalez, J.) (approving

a settlement accounting for 25.3% of the maximum recovery and citing similar cases); *see also Arsenal v. Star Nissan, Inc.*, No. 23 Civ. 06631, 2024 WL 1513531, at *2 (E.D.N.Y. Apr. 8, 2024) (Gonzalez, J.) (approving a settlement with a recovery of 15.72% the maximum recovery amount).

As to the third factor, at 13% of the fund, the awards are within the range of service awards that are approved in this Circuit in wage-and-hour class actions. *See, e.g., Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) and **Ex. H** (Mot. for Approval) at 14-15 (approving service awards ranging from $2,500 to $7,500 for a total of $27,500, representing approximately 16% of the $170,000 settlement); *Siler v. Landry's Seafood House - N. Carolina, Inc.*, No. 13 Civ. 587, 2014 WL 2945796, at *12 (S.D.N.Y. June 30, 2014) (approving service awards totaling $9,000, representing approximately 14.5% of the $62,000 settlement); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards totaling $50,000, representing approximately 16.7% of the $300,000 settlement); *Parker*, 2010 WL 532960, at *2 (approving awards totaling 11% of the fund, "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards").

The Service Payments are also provided in consideration for enhanced releases. *See* ECF No. 41-2 (Agr.) § II(A). Although broad releases are generally not permitted in FLSA cases, they are permissible as consideration for a service award in a class or collective action settlement. *Bondi v. DeFalco*, No. 17 Civ. 5681, 2020 WL 2476006, at *6 (S.D.N.Y. May 13, 2020). Given the significant exchange between the Parties – the enhanced release for Service Payments, the Service Payments warrant approval. *See, e.g., Ray v. 1650 Broadway Assocs. Inc.*, No. 16 Civ. 9858, 2020 WL 5796203, at *3 (S.D.N.Y. Sept. 29, 2020) ("Because the general release is consideration for . . . Service Awards . . . , I find that it is reasonable.").

Finally, unlike many other representative actions, all the Opt-in Plaintiffs reviewed and signed the settlement agreement, which disclosed the service awards and pro rata shares for each Plaintiff and Opt-in Plaintiff. ECF No. 41-2 (Agr.) § I(A).

### III. The Parties Stipulate for Settlement Purposes That They Are Similarly Situated.

This Court does not need to evaluate whether final certification of the FLSA Collective is warranted because each Plaintiff and Opt-In Plaintiff approved the terms of the Settlement Agreement by signing it. *See Stock v. Xerox Corp.*, 516 F. Supp. 3d 308, 313 (W.D.N.Y. 2021) ("a two-step procedure is not necessary in every case; for example, it is not required where each opt-in plaintiff has assented to the terms of the proposed settlement."). In *Stock,* the plaintiffs' attorney represented in a declaration that each opt-in plaintiff consented in writing to the settlement, and the court found this representation was sufficient to ensure the plaintiffs consented. *Id.* Here, Plaintiffs filed a Settlement Agreement signed by each Plaintiff and Opt-in Plaintiff, evidencing that each plaintiff consented in writing to the settlement terms and making it unnecessary for the Court to finally certify the Collective. *See also* Abrahamson Decl. ¶ 7 (confirming Plaintiffs' counsel communicated with every Plaintiff and Opt-in Plaintiff and reviewed the settlement agreement with them.).

The Honorable Hector Gonzalez
Page 6 of 7

Additionally, the Parties stipulate for settlement purposes that the Plaintiffs and Opt-in Plaintiffs are similarly situated. The Parties agree that NLB's tipping policy was the same for all Plaintiffs and Opt-in Plaintiffs. *Id.* ¶ 8.

**IV.     The Settlement Releases Are Appropriate.**

While courts sometimes disfavor general releases in the context of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), courts have found that general releases are permissible when, as here for the Named Plaintiffs, the settlement resolves both wage and hour and non-wage and hour claims. *See supra*; *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC*, No. 15 Civ. 2588, 2016 WL 927183, at *3 (E.D.N.Y. Mar. 7, 2016). Here, the Named Plaintiffs and their counsel have discussed in depth their employment with Defendant when they originally retained counsel, throughout the prosecution of the case, and during settlement negotiations. The Named Plaintiffs and counsel reviewed the settlement agreement thoroughly, including the release provision. Additionally, the Parties settled for $90,000 and only $750 of which represents unpaid tips and $750 in liquidated damages from their FLSA claims; therefore only a small percentage of this case hinged on the FLSA claims. Thus, for these reasons, the general release does not make the settlement unfair.

Moreover, as stated previously, the general releases for the Named Plaintiffs are permissible as consideration for a service award in a class or collective action settlement. *Supra.*

The releases for Opt-in Plaintiffs, unlike the more general releases for the Named Plaintiffs, only release Defendant from FLSA and NYLL claims. *See* Ex. A (Agr.) § II(B). Opt-in Plaintiffs, who did not have the involvement in the prosecution of the case that Named Plaintiffs did, only release Defendant from the types of violations that are, or could have been, alleged in the Complaint. *See Villa v. Highbury Concrete Inc.*, No. 17 Civ. 984, 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022) ("the releases are properly limited to wage- and hour-related claims under the NYLL, FLSA, and related statutes."). And, unlike Named Plaintiffs, Opt-in Plaintiffs are not receiving a service award in exchange for a more robust release. Thus, the Parties believe that a different, more tailored release is appropriate for the Opt-in Plaintiffs. Finally, all Opt-in Plaintiffs reviewed the Settlement Agreement, including the release, and signed it.

**V.     Plaintiffs' Attorneys Fees.**

If the Court approves the Settlement and Plaintiffs' requested fees, Plaintiffs' counsel will receive $30,000 in fees and $1,400 in costs as set forth in the allocation chart in Section I.A of the Settlement Agreement. Plaintiffs' counsel intended to cap their costs at $1,400, and do not seek reimbursement for any costs they incur above $1,400. Plaintiffs' counsel apologizes for the discrepancy in Section I.C of the Settlement Agreement.

**VI.     Conclusion**

Accordingly, Plaintiffs respectfully request that Your Honor approve the settlement and Plaintiffs' Proposed order of Dismissal with Prejudice.

The Honorable Hector Gonzalez
Page 7 of 7

                                                              Respectfully submitted,

                                                              Sally Abrahamson

cc:      All Counsel of Record (via ECF)